IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

No. 95-50075
Summary Calendar

———————————————

United States of America,

Plaintiff-Appellee,

versus

Mukhtar Ahmad,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Western District of Texas
(SA-88-CR-103(2))

_____

(July 13, 1995)

Before JOHNSON, DUHÉ and BENAVIDES, Circuit Judges.[*]

JOHNSON, Circuit Judge:

In this habeas corpus proceeding pursuant to 28 U.S.C. § 2255, Mukhtar Ahmad contends that he received ineffective assistance of counsel for a myriad of reasons and that he was denied the right to counsel of his choice. The district court denied relief without a hearing. Ahmad now appeals and we AFFIRM.

FACTS AND PROCEDURAL HISTORY

This conspiracy began in Pakistan when Mohd Fida attempted to hire Gohar, a/k/a Tereen, to transport a load of heroin to the United States. Unbeknownst to Fida, Gohar was a government informant and he put Fida in contact with Agent Carter of the Drug Enforcement Agency

[*] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

(DEA).  Posing as a drug courier, Carter met with Fida in Pakistan and arranged for another meeting with Fida in the United States.

Early the next month, Carter and Fida met in Atlantic City.  Fida wanted a sample of the heroin to take to prospective buyers in New York City.  He told Carter that he had brought a man with him who had driven him from New York.  He further told Carter that this individual was trustworthy and that he and this individual had done a lot of business in Europe.  This individual was appellant, Mukhtar Ahmad.

Ahmad then retrieved the car and picked up the other men at the hotel.  In the car, Agent Lawrence brought out a package which, in a loud voice, he referred to as the heroin, and transferred it to Fida.

Unhappy with his buyers in New York City, Fida contacted Carter seeking his assistance in finding new buyers.  Carter suggested that Fida come to San Antonio and Fida agreed.  Ahmad later called Carter and asked if Carter would arrange for him to come to San Antonio also.

At the San Antonio meeting, Carter asked Ahmad how much he and Fida wanted for the entire twenty-two kilograms of heroin.  Ahmad conferred with Fida in a foreign language and then wrote $1,500,000.  Carter, looking at that figure, remarked that the asking price appeared to be about $80,000 per kilogram.  Ahmad immediately responded, however, that it was closer to $70,000 per kilogram.  Additionally, both Ahmad and Fida discussed future transactions for heroin and hashish when this transaction was completed.

Fida then asked to meet Carter's buyer.  The three men proceeded to an office to meet the buyer, who was in reality DEA Agent Frank Garcia.  At that meeting, both Fida and Ahmad vouched for the purity of the heroin and told of their ability to supply more.  Once a

purchase price for the load of heroin had been agreed upon, an undercover agent brought in a briefcase containing $400,000. Then, a tote bag containing the heroin was brought into the room. Shortly thereafter, the agents arrested Fida and Ahmad.

The two men were charged with various drug offenses and trial proceeded against Ahmad on September 12, 1988.[1] The jury convicted Ahmad of conspiracy to possess with intent to distribute and aiding and abetting an attempt to distribute heroin. The court then sentenced Ahmad to 188 months of imprisonment, five-years of supervised release and a fine of $17,500.[2]

This Court affirmed Ahmad's conviction and sentence on direct appeal.[3] Now, Ahmad has filed the instant motion pursuant to 28 U.S.C. § 2255 contending that his counsel was ineffective for a plethora of reasons and that he was denied the right to counsel of his choice. The magistrate judge, without holding a hearing, determined that Ahmad's contentions were without merit. Ahmad objected and, after an independent review of the record, the district court rejected Ahmad's objections and denied relief. Ahmad now appeals.

DISCUSSION

I.   Ineffective Assistance of Counsel

---

[1]   Before trial, Fida pled guilty to conspiracy to possess with intent to deliver heroin in violation of 21 U.S.C. § 841(a)(1).

[2]   However, as the court failed to sentence Ahmad on the second count of conviction, the court held a second sentencing hearing. At that hearing, the court sentenced Ahmad on the second count to identical and concurrent sentences of imprisonment and supervised release as the first count and split the fine between the two counts.

[3]   *United States v. Mukhtar*, No. 88-5647 (5th Cir. Jan. 31, 1990) (unpublished).

The bulk of Ahmad's complaints are couched in terms of ineffective assistance of counsel. To obtain relief under § 2255 based on ineffective assistance of counsel, a defendant must show not only that his attorney's performance was deficient, but also that the deficiencies prejudiced the defense. *U. S. v. Smith*, 915 F.2d 959, 963 (5th Cir. 1990); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). If proof of one element is lacking, we need not examine the other. *Kirkpatrick v. Blackburn*, 777 F.2d 272, 285 (5th Cir. 1985), *cert. denied*, 106 S.Ct. 2907 (1986).

To show that his counsel's performance was constitutionally deficient, a movant must show that his counsel's representation "fell below an objective standard of reasonableness." *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S.Ct. 2464, 2473 (1986). In evaluating such claims, this Court indulges in a "strong presumption" that counsel's representation fell "within the wide range of reasonable professional competence," *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988), and the defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *Strickland*, 104 U.S. at 2065. To demonstrate prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068.

A.   Failure to Investigate and Prepare for Trial

Ahmad first contends that his counsel was ineffective because he failed to properly investigate and prepare for trial. In order to establish that his counsel was ineffective for a failure to investigate, a movant must do more than merely allege a failure to prepare or investigate. Rather, a movant must "allege with specificity what

4

the investigation would have revealed and how it would have altered the outcome of the trial." *U. S. v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Without such a specific showing of the evidence or testimony that would have been revealed by a proper investigation, a habeas corpus court cannot even begin to apply the *Strickland* standards. *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).

Ahmad's claims here are long on generalities and short on specifics. Moreover, when Ahmad is specific as to what evidence could have been discovered by a better investigation, his claims generally deal with impeachment evidence as to collateral matters.[4] Given the substantial evidence of Ahmad's guilt, it is unreasonable to believe that impeachment of Garcia and Carter as to these collateral issues would have changed the result. Thus, Ahmad has failed to show sufficient prejudice. *Strickland*, 104 U.S. at 2068.

Further, we disagree that, had Ahmad's counsel conducted a better investigation of the Jencks Act material, he could have moved the district court to suppress certain testimony from Agents Carter and Garcia. The testimony that Ahmad points to is the testimony of Agent Garcia that Ahmad told him that he had been in the heroin business half his life and the testimony of Agent Carter that Ahmad told him about an incident when Ahmad had arranged for a large drug transaction involving roughly five million dollars. Ahmad argues that, with a better investigation, his attorney could have developed evidence

---

[4] For instance, Ahmad argues that had his attorney conducted a better investigation, he would have discovered information with which he could have impeached the testimony of Carter and Garcia as to the iden-tities of the "owners" of the heroin. The government only had to prove that Ahmad "possessed" the heroin, though, and not that he owned it.

5

suggesting that these statements were not true.  However, this misses the point.  It is unimportant if these statements were factually correct.  It is only important that Ahmad made these statements in an attempt to bolster his credibility with the agents.  These statements were properly admitted for that purpose.[5]  As the statements were properly admitted, there was no prejudice.

Finally, Ahmad alleges that his trial counsel was ineffective for failing to object because the trial commenced less than thirty days from the date of the superseding indictment in violation of 18 U.S.C. § 3161(c)(2).  That section provides, in pertinent part, that "the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel. . ."  *Id.*  Although the superseding indictment was returned by the grand jury on August 17, 1988, Ahmad first appeared with counsel on May 12, 1988.  The trial commenced on September 12, 1988, more than thirty days after Ahmad

---

[5]  In a later argument, Ahmad contends that his counsel was ineffective for failing to object to this evidence as extrinsic bad acts that were not charged in the indictment.  "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  Such evidence may be admissible, however, to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*  Thus, if prior-bad-act evidence is relevant to an issue other than character and is therefore admissible under Rule 404, it is admissible if its prejudicial effect does not substantially outweigh its probative value. *United States v. Gadison*, 8 F.3d 186, 192 (5th Cir. 1993).  In this case, Ahmad's defense was that he was a hapless dupe unaware of the heroin.  The evidence that he bragged to undercover agents about past drug dealings so as to earn their trust tends to disprove that he was unaware of the heroin.  Thus, this evidence was not admitted to show the defendant's character, but rather to show that Ahmad was aware that this was a drug transaction.  Accordingly, this evidence would be admissible under Rule 404.  Further, we do not find the prejudicial effect of these statements to substantially outweigh their probative value.

first appeared with counsel.  Hence, Ahmad's argument is without merit.  *U. S. v. Rojas-Contreras*, 474 U.S. 231, 234, 106 S.Ct. 555, 557 (1985) (§ 3161(c)(2) fixes the beginning point for the trial preparation period as the first appearance through counsel and not the date of indictment or any superseding indictment).

B.    Violation of Confrontation Clause

Ahmad contends that his counsel was ineffective because he failed to object to an allegedly hearsay statement on the ground that it violated his rights under the Sixth Amendment to confront witnesses against him.  In specific, Ahmad objects to testimony of Agent Garcia whereby Agent Garcia related that Agent Carter had informed him that Fida and Ahmad were the owners of the heroin.  Arguing that Carter was the real witness against him, Ahmad contends that he should have been able to cross-examine Carter.

Agent Carter did testify at extensively at trial, though. Moreover, Agent Carter was subjected to lengthy cross-examination. The Confrontation Clause mandates that a defendant be permitted to cross-examine a witness to determine if the witness has any biases, prejudices or ulterior motives that may provide an incentive on the part of the witness to falsify his testimony.  *U. S. v. Rocha*, 916 F.2d 219, 242 (5th Cir. 1990), *cert. denied*, 111 S.Ct. 2057 (1991). Ahmad was afforded this opportunity and thus, we see no violation of the Confrontation Clause.

C.    Failure to Object to the Heroin in the Jury Room

As Ahmad concedes, the heroin was properly admitted into evidence.  Even so, Ahmad alleges that his counsel was ineffective because he failed to argue, pursuant to Fed. R. Evid. 403, that the

7

placement of the four bags of heroin in the jury room during deliberations was unduly prejudicial. In light of the substantial evidence against him, Ahmad has failed to convince us that the placement of the heroin in the jury room was so prejudicial that, had his attorney successfully argued to keep it out of the jury room, the result of the proceeding would have been different.

D.    Failure to Request a Cautionary Plea regarding Codefendant's Plea of Guilty

During trial, the jury learned that Ahmad's codefendant Fida had pled guilty and Ahmad now claims that his counsel was ineffective for failing to request a cautionary instruction limiting the use of that information. Our precedent does make it clear that evidence about a co-conspirator's guilt is not admissible as substantive proof of a defendant's guilt. *U. S. v. Leach*, 918 F.2d 464, 467 (5th Cir. 1990), *cert. denied*, 111 S.Ct. 2802 (1991). However, we have recognized an exception to this rule when the record reflects a defense strategy that relies on the co-conspirator's guilt. *U. S. v. Samak*, 7 F.3d 1196, 1198 (5th Cir. 1993). In other words, "a defendant will not be heard to complain of its admission when he instigates such admission, or attempts to exploit the evidence by frequent, pointed, and direct references to the co-conspirator's guilty plea." *Leach*, 918 F.2d at 467 (footnote omitted).

In this case, it was the defense's strategy to admit the guilt of Fida and to paint Ahmad as Fida's hapless dupe. Because defense counsel made pointed and direct references to Fida's guilty plea as a matter of strategy, Ahmad cannot be heard to complain of its admission or the lack of a cautionary instruction. *Samak*, 7 F.3d at 1198.

E.    Failure to Object to a Violation of Fed. R Crim. P. 43(a)

8

Fed. R. Crim P. 43(a) provides that the "defendant shall be present . . . at every stage of trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule."  In this case, during deliberations, the jury sent out a note requesting the transcripts of certain testimony.  The judge denied the jury's request in Ahmad's absence.  Ahmad now argues that his counsel was ineffective because he failed to object that this action was taken without Ahmad present.  However, Ahmad has failed to demonstrate any prejudice flowing from this failure and thus his claim fails.  *Strickland*, 104 U.S. at 2068.

F.    Failure to Object to the Admission of Ahmad's Juvenile
      Conviction

Ahmad contends that his counsel was ineffective because he failed to object to the prosecutor's cross-examination that resulted in the admission of Ahmad's juvenile conviction, failed to object to the prosecutor's references to it in closing argument, failed to request a limiting instruction with regard to the use of Ahmad's juvenile conviction, and failed to object to the district court's erroneous instruction regarding evidence of the prior conviction.  Ahmad's arguments are undercut by this Court's opinion on direct appeal.  First, this Court specifically concluded on direct appeal that the evidence of the juvenile conviction was properly admitted to impeach Ahmad.  R. Vol. 2 at 459.  Moreover, that opinion also concluded that "both the court and counsel for both sides advised the jury as to the limited purpose for which the 1970 misconduct was admitted."  *Id.* at 460.  Lastly, that opinion found that no incorrect instructions were given by the court in this case.  *Id.* at 462.

It is well-settled in this Circuit that issues that are raised

9

and disposed of in a previous appeal from an original judgment of conviction are not considered in section 2255 motions. *U. S. v. Kalish*, 780 F.2d 506, 508 (5th Cir.), *cert. denied*, 106 S.Ct. 1977 (1986). As these issues were disposed of on direct appeal, we will not reconsider them here. Accordingly, Ahmad's claims fail.

G.     Failure to Object to Prosecutor's Closing Argument

In this argument, Ahmad contends that his counsel was ineffective because he failed to object to allegedly improper remarks made by the prosecutor during closing arguments. Specifically, Ahmad alleges that the prosecutor stated his personal opinion that Ahmad was guilty, that Ahmad's story was ridiculous and that the prosecutor personally vouched for the credibility of prosecution witnesses.

It is true that prosecutors, who bear the imprimatur of the government, may not rely on their own credibility to bolster the credibility of a witness. *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 3044 (1993). They may, however, state the inferences and conclusions they wish the jury to draw from the evidence, *U. S. v. Laury* , 985 F.2d 1293, 1307 (5th Cir. 1993), and they may make a fair response to subjects developed by opposing counsel. *U. S. v. Chase*, 838 F.2d 743, 749-50 (5th Cir), *cert. denied*, 108 S.Ct. 2022 (1988).

In this Court's opinion on direct appeal, this Court carefully parsed the arguments made by the prosecutor. Viewed in context, this Court, on direct appeal, found that the prosecutor's observations were not statements of his personal opinion. Rather, this Court found that prosecutor was urging conclusions which the jury might reasonably draw from the evidence. R. Vol. 2 at 461. Moreover, in light of the

10

comprehensive instructions given by the district court, this Court found that, "given the overwhelming evidence against Ahmad, it cannot be held that there is a reasonable probability that the verdict might have been different absent the prosecutor's remarks." *Id.* at 462. Ahmad failed to show, on direct appeal, that absent these statements the result would have been different and he has failed to make such a showing here. Thus, he cannot meet the prejudice showing of the *Strickland* standard for ineffective assistance of counsel. *Strickland*, 104 U.S. at 2068.

H.   Improper Remarks During Closing Arguments by Defense Counsel

During closing arguments, defense counsel made several remarks praising the drug enforcement agents for the risks they take and the good job they do and for getting the guilty man (Fida). Ahmad contends that these remarks were improper and rendered his counsel's performance ineffective. For support, Ahmad relies on this Court's decision in *U. S. v. Brown*, 451 F.2d 1231 (5th Cir. 1971), in which similar comments were found to be impermissible. Ahmad's reliance on *Brown* is misplaced, though, because *Brown* involved prosecutors vouching for government witnesses. *See Id*. at 1235-36.

In this case, it was Ahmad's own counsel who made the statements favorable to the prosecution witnesses. These statements were consistent with the defense strategy to blame Fida and portray Ahmad as a hapless dupe. Thus, as Ahmad has failed to overcome the strong presumption that these statements might be considered sound trial strategy, *Strickland*, 104 S.Ct. at 2065, he has not shown his counsel's performance to have been deficient.

I.   Failure to Raise an Entrapment Defense

11

Ahmad contends that his counsel was ineffective for failing to raise the defense of entrapment.  We find, however, that not rasing this defense was a strategic choice.  The evidence was overwhelming that a crime had been committed.  Defense counsel chose to blame this crime on Fida and paint Ahmad as a hapless dupe who did not know about the heroin transaction.  We conclude that counsel's choice not to present the inconsistent defense of entrapment fell within the wide range of reasonable professional competence, *Bridge v. Lynaugh*, 838 F.2d at 773, and that Ahmad has not overcome the presumption that the challenged action might be considered sound trial strategy. *Strickland*, 104 U.S. at 2065.  Thus, Ahmad has not shown that his counsel's conduct was deficient.

J.    Alleged Errors in Sentencing

Ahmad makes two arguments that his counsel was ineffective in regards to the sentence he received.  First, Ahmad complains that his counsel failed to object that his sentence was illegally applied pursuant to a statutory minimum he claims was not applicable to his offense.  The record clearly shows, though, that Ahmad was properly sentenced under the Sentencing Guidelines and not pursuant to any statutory minimum.  Thus, Ahmad's proposed objection ins baseless and his counsel cannot be faulted for not making a pointless objection.

Second, Ahmad contends that his counsel failed to make any objections at Ahmad's resentencing.  Even so, he does not identify any objections that could have been made nor does he show any prejudice. Instead, Ahmad argues that prejudice should be presumed relying on *Tucker v. Day*, 969 F.2d 155 (5th Cir. 1992).  However, in *Tucker*, this Court found that the defendant had alleged so great a failure of

12

counsel as to amount to a constructive denial of counsel and thus that prejudice should be presumed. *Id*. at 159. In particular, the defendant in *Tucker* alleged that his counsel never consulted with him, had no knowledge of the facts and acted as a mere spectator. Ahmad has made no similar allegations. He has merely alleged that his counsel did not make any objections, but he has not suggested any meritorious objections his counsel could have made. Ahmad did not show a constructive denial of the right to counsel and thus he was not excused from the necessity of showing *Strickland* prejudice. Thus his claim of ineffective assistance must fail.

K.    Ineffective Assistance of Counsel Conclusion

For the reasons stated above, Ahmad's numerous and scattergun allegations of ineffective assistance of counsel are without merit.

II.  Denial of Right to Counsel of Ahmad's Choice

The trial court herein disqualified Ahmad's retained counsel based on potential problems stemming from said counsel's prior representation of codefendant Fida. This action, Ahmad contends, violated his Sixth Amendment right to counsel of his choice. This circuit does not recognize such a right, though. *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) (right to counsel guaranteed by Sixth Amendment does not include the right to counsel of defendant's choice); *U. S. v. Paternostro*, 966 F.2d 907, 912 (5th Cir. 1992) (Sixth Amendment does not guarantee an absolute right to counsel of one's choice). Accordingly, this claim must fail.

In addition, Ahmad contends that the district court erred by granting the government's motion to disqualify Ahmad's chosen counsel

13

without a hearing.[6]  We review a district court's disqualification

ruling for an abuse of discretion.  *Wheat v. U. S.*, 486 U.S. 153, 163-

64, 108 S.Ct. 1692, 1699-70 (1988).

The basis for the disqualification in this case was that the

retained attorney had previously represented Ahmad's codefendant Fida.

Ahmad contends that, at a hearing, he could have waived any conflicts

arising from this dual representation.  *See U. S. v. Garcia*, 517 F.2d

272, 276 (5th Cir. 1975) (defendants may waive their right to

conflict-free representation).  A conflict of interest does not seem

to be the only concern here, though.  It also appeared possible that

the retained counsel could have been called as a witness to impeach

Fida.  For this reason as well, the district court disqualified the

retained counsel.  *See U. S. v. Vasquez*, 995 F.2d 40, 42 (5th Cir.

1993) (district court may refuse defendant's waiver of conflict-free

counsel to ensure integrity of proceedings and perception of

fairness).  Under these circumstances, we see no abuse of discretion.

III. Failure to Hold an Evidentiary Hearing

Ahmad argues that the district court abused its discretion by

failing to hold an evidentiary hearing on his section 2255 motion.  "A

motion brought under 28 U.S.C. § 2255 can be denied without a hearing

only if the motion, files, and records of the case conclusively show

that the prisoner is entitled to no relief."  *U. S. v. Bartholomew*,

---

[6]  As Ahmad did not press this nonconstitutional claim on direct appeal, he would normally be barred from asserting it in collateral review.  *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).  However, the government must raise this procedural bar in the district court to rely on it.  *United States v. Marcello*, 876 F.2d 1147, 1153 (5th Cir. 1989).  As the government did not do so, it has been waived.  *United States v. Drobny*, 955 F.2d 990. 995 (5th Cir. 1992).

974 F.2d 39, 41 (5th Cir. 1992).  As the instant record is sufficient to show conclusively that Ahmad is entitled to no relief, an evidentiary hearing was unnecessary.

CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.